SUN DREDGING, &c., COMPANY, RESPONDENT, v. OTTENS, APPELLANT.

Argued March 12, 1913—Decided June 18, 1913.

1. A dredging company entered into an agreement on October 31st, 1911, with an owner of lots situate near the ocean front in a borough, to pump in and fill with sand his lots for the sum of twenty cents per cubic yard of sand so pumped in. In the same agreement were two provisions (quoted at length in this opinion) which contemplated the further event of another contract (for filling with sand certain streets, binding the lots) being secured by the dredging company, and also provided that "then and in that case" the said agreement "shall be in full force and virtue,"

and that "the said estimate for said filling of the streets shall not exceed the sum of twenty (20) cents per cubic yard." The dredging company on December 1st, 1911, secured a subcontract for such street filling at the sum of twenty (20) cents per cubic yard from a third party, who had the right to award it, and in December, 1911, proceeded with and completed in March, 1912, the work of filling both lots and streets, and it was *held* that the dredging company had legally complied with the said provisions of its agreement.

2. And *held* that the payment to the plaintiff by the defendant at various times during the performance of the work, and after its completion, of large sums of money on account thereof, without either protest or objection by him, and with his full knowledge that the plaintiff was doing the work of lot and street filling under its contracts, should be construed to have been an election by him to affirm his contract with the plaintiff.

3. *Held also,* that the failure of defendant to notify the plaintiff before its work was carried to completion that he elected to rescind his contract with it, coupled with his silent acquiescence in the continuance and completion of the work when he had knowledge of all the facts, and when duty, candor and fair dealing required him to speak, estops him from setting up against plaintiff the defence and counter claim interposed by him.

4. Such estoppels *in pais* may be set up in actions at law as well as in equity.

On appeal from the Supreme Court.

For the appellant, *Robbins & Winters.*

For the respondent, *Bacon & Ware.*

The opinion of the court was delivered by

VREDENBURGH, J. The plaintiff corporation sued to recover the sum of $2,253, with interest, being the balance claimed to be due it under the terms of a written contract between it and the defendant, dated October 31st, 1911, for the filling with sand of defendant's lots, including the sidewalks adjacent thereto, in the borough of North Wildwood, Cape May county, New Jersey.

These lots were located upon and bounded by certain streets as laid down on a map of the borough entitled, "Ocean Front Tract," and were designated thereon by numbers and described by dividing lines bounded upon the streets.

The total contract price for this filling was $7,580, being at the rate of twenty (20) cents per cubic yard of sand fill which was to be pumped in by dredging machines, and was to be in quantity not less than thirty-seven thousand nine hundred cubic yards.

It was not disputed at the trial that all the work contracted for, had been done by the plaintiff, and it was admitted that the defendant had, at various times, during the progress of the work (which had been begun in December, 1911, and finished in March, 1912), paid the plaintiff on account thereof the sum of $5,327, leaving a balance unpaid of the said sum of $2,253.

This balance the defendant claimed the right to set off, or recoup, as damages which he insisted, under his pleaded counter claim, and in his defence at the trial on the merits, he had suffered through the non-performance by the plaintiff of certain provisions of the contract next hereinafter quoted.

The provisions of this contract (of October 31st, 1911), which the defendant asserts have been broken by the plaintiff, are therein thus expressed, viz.:

"It is expressly agreed and understood by and between the parties hereto that this agreement is not to be binding upon either of the parties hereto unless the Sun Dredging and Construction Company shall secure the contract for filling in the streets binding on said lots and blocks hereinbefore enumerated; provided, however, that the said estimate for said filling of the streets shall not exceed the sum of 20 cents per cubic yard''   *   *   *

"In the event of the contract for filling said streets being secured by the Sun Dredging and Construction Company, then and in that case this agreement shall be in full force and virtue; otherwise to be null and void and of no effect."

The evidence shows that subsequently to the execution of this contract, on November 16th, 1911, a third party (McLinden & Company) bid for and secured from said borough a separate contract for filling with sand the streets in question at the price of thirty-five (35) cents per cubic yard, and that no bid was made to the borough by the plaintiff for that work,

and that no contract therefor with the borough was secured by the plaintiff, but that thereafter, on December 1st, 1911, the plaintiff secured from said McLinden & Company, a sub-contract for filling said streets with sand at the sum of twenty (20) cents per cubic yard.

The borough thus became bound to pay to McLinden & Company, for this street improvement the price of thirty-five (35) cents per cubic yard, of sand filling, and admittedly, had the legal right to assess and enforce against the defendant, and his said adjacent lots, by appropriate proceedings, payment for the cost of this filling at this price of thirty-five (35) cents. Consequently the defendant is liable to pay the borough fifteen cents more a cubic yard for the work than he claims he would have been obliged to pay, if the plaintiff had secured from the borough a contract for the same work at the sum of twenty (20) cents a cubic yard. It is this extra cost to him which he seeks in this action to recoup in damages against the plaintiff.

At the close of the evidence the defendant moved the trial court to instruct the jury to find a verdict in his favor, arguing in support of his counter claim, that the plaintiff had not fulfilled its contract with him, in that it had neglected to bid for and secure from the *borough* any contract for filling in the said streets.

This motion was denied, and instead, the court directed the jury to render their verdict against the defendant for the amount of the unpaid balance claimed.

We think the defendant's motion was properly refused, and that he has misconstrued the legal effect of the plaintiff's obligation under the above-quoted provisions of its contract with him; all they required of the dredging company was that it should secure a legal contract giving it the right to fill in the streets binding on the said lots, with sand, at a price which should not exceed the sum of twenty (20) cents per cubic yard. Such a contract the evidence shows the plaintiff in fact secured from McLinden & Company, who had the undoubted right to grant it to the dredging company. The

plaintiff has therefore complied with, and conformed to, the quoted provisions of the contract.

It may, very likely, have been the expectation of the defendant when he entered into the contract of October 31st, 1911, that the dredging company would bid for and secure directly from the borough (and not through the intervention of a third party) a contract for filling the said streets with sand, because he would naturally prefer there should be competition in bidding, probably resulting in lower contract bids and less cost for the work to the municipality, and hence to himself as a lot owner assessable for the cost of the improvement.

But, however this may be, the defendant now insists that we read into the agreement of October 31st, 1911, words not contained in it—namely, that it should not become effective unless the plaintiff would bid for and secure a contract directly with the borough. It is sufficient to answer that to express in the paper such an unexpressed intent of the parties, would require us to do violence to its terms, and interpolate therein after the word "contract," the additional words of substance, viz., "with the borough."

It will be perceived by reference to his answer filed in the record by way of counter claim, that the defendant's construction of this contract there, negatives the soundness of his position now. He there states that the plaintiff secured from McLinden & Company, a contract to do said filling (to use his own words) "in order to comply with the *letter* of contract sued on." He thus concedes the plaintiff had complied *literally* with the said provisions of its contract with him.

But even if this difficulty with the defendant's case could be overcome, we think, his counter claim for damages lacks all merit for other reasons.

He testified he knew, as early as the 17th or 18th of November, 1911, that the plaintiff had not secured from the borough an award of a contract for filling the streets binding on the lots, and that he also knew that McLinden & Company had secured a contract with the borough to fill in the streets at

thirty-five (35) cents a cubic yard, and that the plaintiff had made with McLinden & Company, a subcontract to do that filling at the price rate of twenty (20) cents per cubic yard; he also admitted he knew by December 1st, 1911, the plaintiff was proceeding with its work of filling in his lots, and was incurring the expense of dredging and pumping the sand upon his lots. yet, notwithstanding such knowledge, not only did he fail to protest, or to object to the work, or give notice of his election to disaffirm or rescind the contract of October, 1911, but he actively encouraged the dredging company to go on with the work, by making several payments on account thereof, of the large total sum of five thousand three hundred and twenty-seven ($5,327) dollars, at various times during its continuance and since its finish. He has thus, with full knowledge affirmed the plaintiff's contracts.

He admits he made no objection to the plaintiff's proceeding with the work, at any time from its commencement to its end. He kept silent, when he should have spoken.

Under these circumstances, we think the defendant should be held to be estopped from setting up the claim for damages he has interposed. He was bound to elect either to affirm or disaffirm the contract of October 31st, 1911, as soon as he knew the plaintiff had not secured from the borough any contract for the filling of the streets, but was nevertheless proceeding with the work on the faith of its contracts with him, and with McLinden & Company. He had the option either to rescind the contract of October 31st, 1911, or hold the plaintiff to it. To refrain from rescission until after the work of the plaintiff had been done, was too late an exercise of such option.

The principle is familiar law that the court will refuse its aid to one who remains silent when duty, candor and fair dealing require him to speak out, and such estoppel *in pais* may be set up in actions at law as well as in equity.

The doctrine of estoppel (says Herman) "is both equitable and legal, and will be applied by courts, both in law and equity, in all proper cases upon well ascertained facts and

between the proper parties." *Herm. Estop.* 11, ¶ 9; 2 *Pom. Eq. Jur.*, ¶ 802; 16 *Cyc.* 725, 727, and cases cited.

*Central Railroad Co.* v. *MacCartney,* 39 *Vroom* 167, and cases cited on page 175. In the opinion of Mr. Justice Pitney in this case, it is said (at *p.* 175) that the doctrine of equitable estoppel, although the creature of equity and depending upon equitable principles, is recognized and enforced alike by the courts both of law and of equity. *Ross* v. *Elizabeth Town,* 1 *Gr. Ch.* 422.

In *Carlisle* v. *Cooper,* 6 *C. E. Gr.* (at *p.* 591), the general principle is declared by Chief Justice Depue to be that "A party who knowingly, though passively, encourages another to expend money under an erroneous opinion of his rights, will not be permitted to assert his title, and thereby defeat the just expectation upon which such expenditure was made." Abundant authority is cited on page 591 in support.

The grounds of this appeal are framed under the simplified methods of practice authorized by the recent "Practice act (1912)." After their examination, and of the whole record, we find no error injuriously affecting the substantial rights of appellant and the judgment below in favor of the plaintiff, is, for the reasons given, affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, JJ. 14.

*For reversal*—None.